## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-25-146-PRW |
| ) | |
| JUSTIN DAVID GILLILAND, ) | |
| ) | |
| Defendant. ) | |

### ORDER

Before the Court is the United States' Motion to Revoke Magistrate Judge's Order of Release (Dkt. 22) and Defendant Justin David Gilliland's Response (Dkt. 24). For the reasons that follow, the Court **GRANTS** the Motion (Dkt. 22).

### *Background*

**I.    Procedural History**

On April 16, 2025, Gilliland was charged with one count of being a Prohibited Person in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(8). (Dkt. 1). Gilliland appeared before United States Magistrate Judge Suzanne Mitchell on May 28, 2025, for arraignment. At the hearing, the Government moved for Gilliland's pretrial detention based on risks of nonappearance and danger to the community. (Dkt. 7). The Probation Office interviewed Gilliland following the arraignment and submitted a Pretrial Services Report, which identified several risk factors for non-appearance and dangerousness, designated Gilliland as a Pretrial Risk Assessment Category 4 (the second-highest risk category),

indicated that he has a total pretrial release failure rate of 29%, and accordingly recommended that Gilliland be detained pending trial. (Dkt. 15).

On June 2nd, Judge Mitchell held a detention hearing where she heard testimony from ATF Special Agent Brian Anderson, accepted a proffer of evidence from the defense, and considered argument from the parties. Following the hearing, she ordered Gilliland's release on an unsecured $10,000 bond with conditions, which included GPS monitoring and in-patient substance abuse treatment. (Dkts. 16–18). The United States promptly requested a stay of Gilliland's release to appeal the release order, and Judge Mitchell granted that request. The United States filed this motion the next day. Due to the time sensitivity of the matter, the Court ordered expedited briefing while extending the stay of the release order until it had resolved the motion.

**II.    Factual Background**

Gilliland is 45 years old. He acquired seven criminal convictions prior to his 21st birthday, including two felony convictions for drug offenses. In 2011, he received pardons for five of those convictions, including the two felonies. Two protective orders were filed against him in 2000 and 2009, though the latter was dismissed. Gilliland otherwise avoided legal trouble until 2024.

On July 17, 2024, Gilliland's ex-girlfriend, Lisa A. Carpenter sought a protective order against Gilliland in Comanche County, on behalf of herself and her minor child. The

emergency protective order was issued.[1] On October 28, 2024, Gilliland's daughter, Devan Whitten sought a protective order against Gilliland in Grady County, on behalf of herself and her three children.[2] The Grady County petition indicates that on October 18, 2024, Gilliland waited in Whitten's driveway, hid an AR-style rifle on her back porch, and had a loaded magazine for that rifle in his vehicle. He admitted to law enforcement that he had entered Whitten's home without permission and was arrested for breaking and entering and public intoxication.[3] These events occurred while the Comanche County emergency protective order—which prohibited him from possessing firearms—was in effect. Gilliland is now under two final protective orders: one issued in Grady County on January 23, 2025, which remains in effect until January 23, 2026; and another issued in Comanche County on March 27, 2025, which remains in effect until March 27, 2026.

During a May 28, 2025, interview with his federal probation officer, Gilliland denied that there were firearms at his residence and claimed that he had surrendered his only two guns to law enforcement due to his active protective orders. But when law enforcement executed a search warrant at that residence two days later as part of an ongoing

---

[1] *See* OSCN, *Carpenter v. Gilliland*, No. PO-2024-448, District Court of Comanche County (available at https://www.oscn.net/dockets/GetCaseInformation.aspx?db=comanche&number=PO-2024-448&cmid=566929).

[2] *See* OSCN, *Whitten v. Gilliland*, Case No. PO-2024-00161, District Court of Grady County (available at https://www.oscn.net/dockets/GetCaseInformation.aspx?db=grady&number=PO-2024-00161&cmid=11607024).

[3] *See* OSCN, *State of Oklahoma v. Gilliland*, Case No. CM-2024-00498, District Court of Grady County (available at https://www.oscn.net/dockets/GetCaseInformation.aspx?db=grady&number=CM-2024-00498&cmid=11601769).

investigation into an allegation of rape and kidnapping by Gilliland, they found ten firearms and approximately 2,500 rounds of ammunition.

Lisa Carpenter reported that Gilliland had previously stated he "does not plan on going back to prison." Agent Anderson testified that Gilliland has also said he would shoot law enforcement if they entered his home.[4] Additionally, Gilliland has failed to comply with conditions of unsupervised release in his Grady County case, admitting to alcohol and marijuana use in May 2025. Gilliland reports access to approximately $60,000 in a checking account.

### *Legal Standard*

Upon an order of release by a magistrate judge, the Government may file "a motion for revocation of the order."[5] District courts review a magistrate judge's release order *de novo*.[6] Whether to hold an evidentiary hearing is within the district court's discretion.[7]

The Bail Reform Act "establishes a two-step process for detaining an individual before trial."[8] At the first step, the government can move for pretrial detention if the case involves certain enumerated offenses, including any offense involving the possession or use of a firearm, or involves "a serious risk that such person will flee," or "a serious risk

---

[4] Audio tape: Detention Hearing (June 3, 2025), at 10:20–21 am.

[5] 18 U.S.C. § 3145(a)(1).

[6] *See United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).

[7] *See United States v. Oaks*, 793 F. App'x 744, 747 (10th Cir. 2019) (The district court has discretion "to hold a hearing if it determines it needs to do so."); *see also Cisneros*, 328 F.3d at 617 (It was the district judge's "prerogative" to hold a detention hearing.).

[8] *United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017).

that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."[9] Here, the Government seeks detention based on the nature of the charged offense (which involved possession of a firearm) and serious risk of flight.

Having satisfied the first step, at a hearing the government must then prove that there is "no condition or combination of conditions" that "will reasonably assure the [defendant's] appearance . . . as required and the safety of any other person and the community."[10] The government bears the burden of proving "risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence."[11]

## *Analysis*

Having reviewed the record and the briefing, the Court finds that detention is warranted. First, although he has familial ties to Lawton, Gilliland poses a risk of flight, as outlined in the Pretrial Report. The weight of the evidence is strong, and he faces a potential 15-year sentence.[12] He has violated prior release conditions, defied protective orders, and expressed an unwillingness to return to prison. He also lied about the presence of firearms in his home. Gilliland's demonstrated pattern of disregard for court orders, combined with his incentives and significant financial means to flee, provide the requisite evidence that

---

[9] *Id.* (quoting 18 U.S.C. § 3142(f)(2)).

[10] 18 U.S.C. § 3142(f); *Ailon-Ailon*, 875 F.3d, at 1336.

[11] *Cisneros*, 328 F.3d at 616 (citations omitted).

[12] *See* 18 U.S.C. § 924(a)(8).

he is a flight risk. Accordingly, the Court finds that the United States has shown by a preponderance of the evidence that Gilliland is a flight risk.

Next, the United States has shown by clear and convincing evidence that Gilliland is a danger to others. In making its determination, the Court must consider the factors enumerated in Section 3142(g), which include: (1) "the nature and circumstances of the offense charged, including whether the offense . . . involves a . . . firearm," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

Regarding the first two factors, again, Gilliland faces a relatively serious charge involving a firearm. And the weight of the evidence is strong: a loaded magazine found in Gilliland's truck matched the firearm hidden on his daughter's porch.

As for Gilliland's history and characteristics, the Court is to consider Gilliland's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings[.]"[13] Although Gilliland has longstanding family ties in Oklahoma—particularly with his mother—his other relationships appear strained. Notably, his daughter—having no confidence in Gilliland's willingness to comply with the protective order—reportedly left the state with her children out of fears for their safety upon learning

---

[13] 18 U.S.C. 3142(g)(3)(A).

that Gilliland had bonded out of custody. While Gilliland is currently unemployed, he holds a commercial driver's license and thus retains the capacity to obtain lawful employment. As previously noted, he has access to substantial financial resources. The record reflects ongoing struggles with substance abuse and some indication of suicidal ideation. And while Gilliland received pardons for most of his criminal convictions from his youth, his more recent conduct raises substantial concerns—in particular his possession of a firearm in defiance of a court order, his possession of that firearm while breaking and entering into a family member's home while intoxicated, and his untruthfulness regarding his access to additional firearms at his home. On balance, Gilliland's history and characteristics cut against pretrial release.

Finally, Gilliland's release would pose a serious danger to others. Gilliland is currently under two active protective orders, both issued in the context of domestic conflict and substance abuse.[14] Gilliland's continued possession of firearms in direct violation of those orders amplifies his danger to the community.[15] The Court is not persuaded that in-patient substance abuse treatment would sufficiently mitigate Gilliland's demonstrated disregard for court orders. And GPS monitoring, which would aid in locating Gilliland should he flee or violate the protective orders, won't prevent him from doing either in the

---

[14] *United States v. Rogers*, 371 F.3d 1225, 1229–30 (10th Cir. 2004) ("A defendant whose background includes domestic violence which advances to . . . the imposition of a protection order has a demonstrated propensity for the use of physical violence against others." (citation omitted)).

[15] *Id.* ("The possession of guns in violation of § 922(g)(8) . . . increases the risk that individuals subject to a domestic protection order . . . may engage in violent acts.").

7

first instance. These factors, considered alongside Gilliland's history, show that he poses an "identified and articulable threat" to the community,[16] the risk of which cannot be reasonably addressed by any condition or combination of conditions of release.

### *Conclusion*

Having considered the record *de novo* in light of the Section 3142(g) factors, the Court finds that: (1) the United States has proven a risk of flight by the preponderance of the evidence; and (2) the United States has proven a risk of danger to the community by clear and convincing evidence. The Court further finds that there is no condition or combination of conditions that would reasonably assure the safety of the community.

The Court **GRANTS** the Motion (Dkt. 22) and **REVOKES** Judge Mitchell's Order Setting Conditions of Release (Dkt. 17). Gilliland will be detained in the custody of the U.S. Marshals pending trial.

**IT IS SO ORDERED** this 10th day of June 2025.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[16] *Cisneros*, 328 F.3d at 619 (quoting *United States v. Salerno,* 481 U.S. 739, 751 (1987)).